# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01878-PAB-STV

GLENDON CRAWFORD,

     Plaintiff,

v.

MERRICK GARLAND;
FEDERAL BUREAU OF PRISONS;
COLETTE PETERS;
ANDRE MATEVOUSIAN; and
A. CIOLLI,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Entered by Chief Magistrate Judge Scott T. Varholak

This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) (the "Motion to Dismiss") [#53] and Defendants' Partial Motion for Summary Judgment (the "Motion for Summary Judgment") [#54], (collectively, the "Motions"). The Motions have been referred to this Court.  [#56]  The Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motions.  For the following reasons, the Court respectfully **RECOMMENDS** that the Motion to Dismiss and the Motion for Summary Judgment be **GRANTED** and Plaintiff's Amended Complaint be **DISMISSED**, as set forth below.

I.    **BACKGROUND**[1]

Plaintiff, who proceeds pro se, is currently incarcerated with the Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum Facility, in Florence, Colorado ("ADX"). [#26 at 3] Plaintiff is in custody as a result of a 30-year sentence imposed in *United States v. Crawford*, No. 1:14-CR-00030-GLS, 2016 WL 8605215, at *1 (N.D.N.Y. Dec. 19, 2016). [##26 at 6; 53 at 3] Plaintiff has been subject to Special Administrative Measures ("SAMs") since 2017.[2] [#26 at 9; *see also* #53-2] The SAMs imposed on Plaintiff were reviewed and renewed in 2023 and 2024. [#53-3]

According to the most recent SAM Memorandum, Plaintiff was found guilty after a jury trial of three terrorism related offenses involving his assembly and intended use of a lethal radiation device for the purpose of harming or killing Muslims and other persons in the United States. [*Id.* at 2] The Memorandum states that because of Plaintiff's proclivity for violence, Defendant former Attorney General Merrick Garland implemented SAMs to

---

[1] The facts in this section are largely drawn from Plaintiff's Amended Complaint (the "Complaint") [#26] and must be taken as true for the purposes of the Motion to Dismiss. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)). The Court also considers the Memorandum concerning the Special Administrative Measures imposed on Plaintiff as these Special Administrative Measures are referred to in Plaintiff's Complaint and are central to his claims. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding a court "must consider the complaint in its entirety . . . [and] documents incorporated into the complaint by reference").

[2] Pursuant to federal regulation, the Attorney General of the United States may direct the Bureau of Prisons to "implement special administrative measures ["SAMs"] that are reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a). These SAMs may include limiting certain privileges, "including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism." *Id*. With approval, each SAM may be imposed for up to one year, but they may be extended in one-year increments. 28 C.F.R. § 501.3(c). The inmate must be provided with written notification of the restrictions imposed and the basis for these restrictions. 28 C.F.R § 501.3(b).

restrict Plaintiff's access to the mail, the media, the telephone, and visitors to safeguard against "enabl[ing] sympathizers, copycats, would-be terrorists, and other potentially violent actors about how to acquire, build, and use powerful radiation devices." [*Id*. at 4] According to the Memorandum, throughout his time at ADX, Plaintiff has attempted to send written correspondence to lawmakers advocating for the use of lethal devices against terrorists. [*Id*.]

Under the SAMs imposed, Plaintiff is prohibited from communicating socially with non-approved contacts or non-family members and is prohibited from communicating with attorneys without preclearance from the Federal Bureau of Investigation [#26 at 7; *see generally* #53-3] Plaintiff gained approval to contact Jared Kushner in August of 2022, but was denied when he attempted to send a letter to Kushner in September 2022. [#26 at 8] Since 2022, Plaintiff has requested to contact multiple attorneys and legal organizations to solicit legal counsel, including: Joshua Dratel, Esq. on March 1, 2022; Rathod Mohamedbhai, LLC on April 7, 2022; Alina Habba, Esq. on August 26, 2022; Matthew Whitaker, Esq. on September 13, 2022; the American Cornerstone Institute on February 8, 2024; the Heritage Legal Foundation on February 12, 2024; the Wrongful Conviction Clinic on February 24, 2024; and over a dozen other attorneys and organizations. [*Id*. at 7; #70 at 25-27] These requests were repeatedly denied without explanation. [*Id*.]

In addition to attempting to contact attorneys, Plaintiff has made repeated efforts to obtain representation since 2015. [#26 at 11] Plaintiff previously worked with an attorney who allegedly exploited and betrayed him and stole approximately $100,000 from him, leading to her disbarment. [*Id*. at 11, 21-23] This ordeal has left Plaintiff with

two accruing tax liabilities with the IRS and New York State tax authorities, turning him into a "tax criminal."  [*Id*. at 12, 24-25]  The SAMs imposed on Plaintiff have impaired his ability to manage these tax liabilities.  [*Id*. at 13]

Plaintiff filed this lawsuit on July 24, 2023.  [#1]  He filed the operative Complaint on February 12, 2024.  [#26]  Plaintiff alleges that the SAMs imposed on him and their subsequent renewals violate his constitutional rights, including his First Amendment right to free speech, his Fifth Amendment right to due process, his Sixth Amendment right to counsel, and his Fifth Amendment right to equal protection.  [*See generally Id*.]  Plaintiff brings each of his claims against the BOP and against the Individual Defendants in their official and individual capacities.  [*Id*. at 3-5]  He seeks money damages from the Individual Defendants pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and seeks injunctive relief against all the Defendants. [*Id*. at 4]  In his Request for Relief, Plaintiff seeks immediate termination of the SAMs imposed on him; a transfer to a facility in New York; punitive damages; appointment of counsel; legal costs; access to his mail log without a Freedom of Information Act ("FOIA") request; an order for the Special Investigative Supervisor ("SIS") to explain the repeated denials of his communication requests, including past and future requests; and documents free of redactions.  [*Id*. at 20]

On June 14, 2024, Defendants moved to dismiss Plaintiff's claims and moved for partial summary judgment on Plaintiff's requests for relief.  [##53, 54]  Plaintiff filed a response on July 15, 2024 to the Motion to Dismiss [#70] and Defendants replied on July 29, 2024 [#73].  Plaintiff filed a response to the Motion for Summary Judgment on July 30, 2024 [#74] and Defendants replied on August 2, 2024 [#76].

## II.    STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  The district court may also consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.  *Cnty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).  In asserting a claim, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the

elements necessary to establish an entitlement to relief under the legal theory proposed."
*Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### B. Summary Judgment

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). If the moving party bears the burden of proof at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim or defense upon which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict." *Rodell v. Objective Interface Sys., Inc.*, No. 14-cv-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331). "Where, as here, a defendant moves for summary judgment to test an affirmative defense, '[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.'" *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir.1997)). "Once the defendant makes this initial showing, 'the plaintiff must then demonstrate with specificity the existence of a disputed material fact.'" *Id.* (quoting *Hutchinson*, 105 F.3d at 564). "If the plaintiff cannot meet this burden, 'the affirmative defense bars [her] claim, and the defendant is then

entitled to summary judgment as a matter of law.'"  *Id.* (quoting *Hutchinson*, 105 F.3d at 564).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).  In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the non-moving party."  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

### C.  Pro se Pleadings

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).  "The *Haines* rule applies to all proceedings involving a pro se litigant."  *Id.* at 1110 n.3.  The Court, however, cannot be a pro se litigant's advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).  Moreover, pro se parties must "follow the same rules of procedure that govern other litigants."  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

III.    **ANALYSIS**

In their Motion to Dismiss, Defendants contend that Plaintiff has failed to state any claim for relief against them [#53 at 9-20], that Plaintiff's Request for Relief states several additional issues that do not constitute "claims" [*id*. at 20-22], that no *Bivens* remedy is available to Plaintiff in this case [*id*. at 22-24], and that they are entitled to qualified immunity for all claims [*id*. at 25-27].  In their Motion for Summary Judgment, Defendants argue that Plaintiff has failed to exhaust the administrative remedies for three of the four issues presented in Plaintiff's Request for Relief as independent claims and the Court should dismiss per the exhaustion requirement under the Prison Litigation Reform Act ("PLRA").  [#54 at 7-10]  The Court begins by addressing the Motion for Summary Judgment, then turns to Plaintiff's *Bivens* claims, and concludes with an analysis of Plaintiff's constitutional claims.

   **A.  Defendants' Motion for Summary Judgment**

Defendants argue that a number of the requests for relief in Plaintiff's Complaint are not identified as claims.  [*Id*. at 2]  Specifically, Plaintiff requests that he should be given access to his mail log without needing to submit a FOIA request; that the SIS should provide him reasons why his past requests for advocates have been denied and why future requests are denied; and that he should be given unredacted versions of documents he seeks to acquire.  [#26 at 20]  Defendants argue that if the Court were to construe these as claims, it should grant summary judgment for Defendants on these requests for relief because Plaintiff failed to administratively exhaust them.  [#54 at 2, 7-10]

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The United States Supreme Court has made clear that the PLRA's exhaustion requirement "is 'mandatory':   An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  *Ross v. Blake*, 578 U.S. 632, 638 (2016).  Thus, "[a]ny prisoner who seeks to bring a claim involving general circumstances or particular episodes of prison life must first exhaust the administrative remedies available to him in prison."  *May v. Segovia*, 929 F.3d 1223, 1226-27 (10th Cir. 2019) (citations and quotation omitted).  The PLRA's exhaustion requirement "'seeks to affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).

In his response, Plaintiff concedes that he did not exhaust administrative remedies as to the three forms of relief challenged by Defendants in their Motion for Summary Judgment.   [#74 at 1]   Thus, the Court RECOMMENDS the Motion for Summary Judgment be GRANTED.

## B.  Plaintiff's *Bivens* Claims

Plaintiff seeks monetary damages from the Individual Defendants pursuant to *Bivens*, 403 U.S. 388.  [#26 at 4; 20]  In its Motion to Dismiss, Defendants argue no *Bivens* remedy exists for Plaintiff's claims.  [#53 at 22-24]  This Court, bound by the decisions of the Supreme Court and the Tenth Circuit, agrees.

*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court.  403 U.S. at 392.  In *Ziglar v. Abbasi*, 582 U.S. 120, 131-40 (2017), the Supreme Court adopted a two-step approach to determine whether a plaintiff could vindicate his constitutional rights in a suit for damages through a *Bivens* action.  First, the Court asked whether the case presented "a new *Bivens* context" such that it was "different in a meaningful way from previous *Bivens* cases" including *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980).  *Ziglar*, 582 U.S. at 139.  If so, then the Court examined whether there was any alternative remedial structure present or other "special factor counselling hesitation" in creating an implied damages remedy.  *Id*. at 136.

But as the Tenth Circuit explained in an opinion published just last year—which this Court will quote extensively from—the Supreme Court has tightened the vice around *Bivens* and "is on course to treating *Bivens* as a relic of the 20th century."  *Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024).  In *Logsdon*, the Tenth Circuit relied on *Egbert v. Boule*, 596 U.S. 482, 492 (2022) to conclude that a *Bivens* remedy did not exist for the plaintiff.  Summarizing its understanding of *Egbert*, the Tenth Circuit stated:

> Without explicitly overruling its three acknowledged precedents [that established *Bivens* remedies in similar contexts], the [Supreme] Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy."  *Egbert v. Boule*, 596 U.S. 482, 492, 142 S.Ct. 1793, 213 L.Ed.2d 54 (2022).  And the circumstances in which the answer to the question is "no" appears to comprise a null set.  *See id*. at 503.

91 F.4th at 1355. The Tenth Circuit continued, "perhaps even more striking, the [Supreme] Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent." *Id*. Such a reason includes, in the Tenth Circuit's reading, the existence of an alternative remedial process. *Id*. at 1356-57, 1359-61.

The Tenth Circuit in *Logsdon* concluded that their analysis should focus on a single question: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id*. at 1357 (quoting *Egbert*, 596 U.S. at 492). The Tenth Circuit then analyzed three features of the case to determine whether any one of these features meaningfully differed from *Bivens*. *Id*. at 1357-61. One of these features was "the existence of other remedies for misconduct." *Id*. at 1357. As to that factor, the Tenth Circuit explained that *Egbert* instructed:

> So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy.

*Id*. at 1359 (quoting *Egbert*, 596 U.S. at 498) (omission of internal quotation marks maintained). As a result, because the United States Marshal Service ("USMS") had a grievance procedure and the Department of Justice's Office of the Inspector General had an investigation procedure that covered the USMS, the Tenth Circuit concluded that the plaintiff could not bring a *Bivens* claim. *Id*. at 1359-61.

Another court in this district succinctly summarized the *Bivens* inquiry after *Logsdon*:

[T]he Court sees two potential avenues for district courts in the Tenth Circuit: either (1) the two *Ziglar* questions remain, but following *Egbert*, the order of consideration is immaterial because an affirmative answer to either provides an "independent reason" to deny a *Bivens* remedy, or (2) the two questions have collapsed into one because the existence of an "alternative remedial structure" or other "special factors" not considered in *Bivens/Carlson* is both a "meaningful difference" and an indication that "Congress might be better equipped to create a damages remedy." *Ziglar*, 582 U.S. at 122, 136; *Egbert*, 596 U.S. at 492; *Silva*, 45 F.4th at 1141 n.5; [*Logsdon*], 91 F.4th at 1357.

In *Logsdon*, although not explicitly mandating one of these analytical frameworks, the Tenth Circuit clearly indicates a preference for the latter. 91 F.4th at 1357 ("In this case we conclude our analysis should focus on that single question.").    Of course, whichever framework is used, the outcome in this case is the same, the existence of an alternative remedial process not considered in *Carlson*—including the BOP Administrative Remedy Program—forecloses the availability of *Bivens* to plaintiffs seeking damages for constitutional violations by federal officials. *Silva*, 45 F.4th at 1141; *Noe I*, 2023 WL 8868491, at *3; *see also Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (explaining that *Bivens* relief was unavailable where a federal prisoner could, amongst other options, file grievances through the Administrative Remedy Program).

*Noe v. United States*, No. 21-cv-03340-CMA-STV, 2024 WL 1464375, at *5 (D. Colo. Apr. 4, 2024)

Here, Plaintiff does not dispute that his allegations of constitutional violations against Defendants fall within the BOP's Administrative Remedy Program.[3]  [#26 at 19] The existence of this alternative remedial process  provides a "reason to think that Congress might be better equipped to create a damages remedy." *Logsdon*, 91 F. 4th at 1357.  Accordingly, Plaintiff may not pursue a *Bivens* remedy. *Id.*; *see also Davis v. Holder*, No. 12-cv-02122-REB-KMT, 2014 WL 1713429, at *9 (D. Colo. Apr. 23, 2014) (in a case decided before *Egbert* and *Logsdon*, denying the expansion of *Bivens* to a case

---

[3] The BOP Administrative Remedy Program "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her confinement." 28 C.F.R. § 542.10(a). It "applies to all inmates in institutions operated by [the BOP]." *Id.* at § 542.10(b).

premised on constitutional challenges to an inmate's SAMs restrictions because of the availability of alternative remedies).  Thus, the Court respectfully RECOMMENDS that the Motion be GRANTED to the extent it seeks  to dismiss Plaintiff's *Bivens* claims against the Individual Defendants.[4]

### C. Constitutional Claims

In his Complaint, Plaintiff alleges violations of his First Amendment right to free speech; Fifth Amendment right to due process and equal protection;[5] and Sixth Amendment right to counsel.  [#26]  In all cases in which a prisoner asserts that a prison regulation violates the Constitution, the principle that inmates retain at least some constitutional rights must be weighed against the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration.  *Washington v. Harper,* 494 U.S. 210, 223-24 (1990).  "Government conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison."  *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010).  Accordingly, only a rational connection must exist between a prison policy and a legitimate penological interest to justify it.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In *Turner*, the Court held that four factors are relevant to the inquiry:

---

[4] Because the Court concludes that Plaintiff may not pursue a claim for monetary damages against the Individual Defendants based on the lack of a *Bivens* remedy, the Court need not address Defendants' alternative argument that the Individual Defendants are entitled to qualified immunity.  *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004) ("Qualified immunity applies to claims for monetary relief against officials in their individual capacities, but it is not a defense against claims for injunctive relief against officials in their official capacities.").

[5] In his Response to Defendants' Motion to Dismiss, Plaintiff asks the Court to dismiss his equal protection claim due to his "inability to prove [the] necessary evidence[.]"  [#70 at 14]  Based upon this concession, the Court respectfully RECOMMENDS that the Motion be GRANTED to the extent it seeks to dismiss Plaintiff's equal protection claim.

(1) whether the regulation has a "valid, rational connection" to a legitimate governmental interest;
(2) whether alternative means are open to inmates to exercise the asserted right;
(3) what impact an accommodation of the right would have on guards and inmates and prison resources; and
(4) whether there are "ready alternatives" to the regulation.

482 U.S. at 89-91 (numbers and spaces added).  In weighing these factors, courts must "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

"[I]n ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest." *Al-Owhali v. Holder,* 687 F.3d 1236, 1240 (10th Cir. 2012) (quotation omitted).  "Taken together, *Iqbal* and *Turner* require an inmate to plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Id.*  (quotation omitted).  Consequently, a complaint may not be plausible unless it contains specific factual allegations demonstrating why the government's justifications do not have a rational connection to the challenged restrictions.  *Gee*, 627 F.3d at 1185.

### 1.  CLAIM ONE: First Amendment Violations

### A.  Free Speech

Plaintiff's first claim alleges that Defendants violated his First Amendment rights by prohibiting his communications with external contacts, specifically attorneys and social (non-legal) contacts, without approval.  [#26 at 7-8]  Plaintiff further claims that even

*approved* non-legal recipients were not sent communications from Plaintiff.  [*Id*. at 8]
Plaintiff believes that Defendants have abused their authority and violated his
constitutional right to free speech in prohibiting his communications, arguing that these
restrictions lack any legitimate penological justification.  [*Id*. at 6, 8]

Defendants contend that the SAMs restrictions on Plaintiff are reasonably related
to the legitimate penological interests of preventing violence and preventing the
dissemination of highly sensitive information that Plaintiff possesses which may be used
by copycats.  [#53 at 10]  Defendants rely on Plaintiff's SAMs Memorandum that explains
his "proclivity for violence" as evidenced by his plans "to acquire an industrial-grade
radiation system capable of producing massive amounts of lethal, ionizing radiation, to
modify it by adding a remote initiation component, to place the system in a truck, and then
to have the truck driven to designated locations to kill human targets inside buildings at
those locations."  [*Id*.; #53-2 at 2-3]  Defendants also rely on the allegation that, while
incarcerated, Plaintiff continues to be unrepentant for actions for which he was convicted
and has attempted to contact lawmakers advocating for the use of deadly weapons
"against terrorists and/or rival nations."  [## 53 at 10; 53-3 at 4-5]

Under *Turner*, the Complaint must allege facts that plausibly suggest that the
SAMs policy at issue was not reasonably related to a legitimate penological interest.
Here, Plaintiff simply alleges that the SAMs are "abuses of authority, serve[] no legitimate
penological interest, [are] an exaggerated response, and fail[] to reflect [Plaintiff's] entirely
non-violent background."  [#26 at 8]  These conclusory allegations are insufficient to
plausibly allege that Defendants lacked a legitimate penological interest to impose and
renew the SAMs.  *Salim v. Holder*, No. 13-cv-03175-RM-CBS, 2015 WL 13849468, at *6

(D. Colo. Mar. 4, 2015) (conclusory allegations that SAMs were unrelated to a legitimate penological purpose failed to support a claim that the SAMs violated the inmate's First Amendment rights), *report and recommendation adopted*, 2017 WL 11487131 (May 2, 2017); *Davis v. Holder*, No. 12-cv-02122-REB-KMT, 2014 WL 1713429, at *10 (D. Colo. Apr. 23, 2014) (same)

The only attempt Plaintiff makes at pleading facts suggesting that the SAMs are not reasonably related to a legitimate penological interest is his assertion that he should not be subject to SAMs restrictions because he has never been accused or convicted of any violent acts, was not under SAMs restrictions pre- or post-conviction (until six months into his 30-year sentence), and was never accused of violating BOP rules. [*Id.* at 6]  With respect to Plaintiff's assertion that he was never accused or convicted of any violent acts, this assertion is belied by the Northern District of New York's docket which proves Defendant was convicted of three offenses related to attempts to use a weapon of mass destruction, a fact of which this Court may take judicial notice. *United States v. Crawford*, 14-cr-00030-GLS, Docket No. 175 (N.D.N.Y. Dec. 19, 2016); *see also United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (noting that a court may take judicial notice of a court docket).  Nor is the Court persuaded that Plaintiff's assertions that he has a clean BOP record and that the Attorney General did not immediately impose the SAMs plausibly allege that the SAMs lack a legitimate penological purpose. *Salim*, 2015 WL 13849468, at *5 (The "passage of time and [Plaintiff's] relatively clean record in prison do not diminish the weight of the nature of his crime in establishing the SAMs.").  Indeed, the "penological interest need not be related only to post-incarceration conduct. Prison officials are permitted to consider the nature of the underlying crime for which a prisoner

was convicted." *Sattar v. Holder*, No. 07-CV-02698-PAB-KLM, 2012 WL 882401, at *8 (D. Colo. Mar. 15, 2012).

Here, Plaintiff is subject to SAMs in order to protect against a substantial risk that, given his knowledge of building lethal weapons and motivation to use these weapons against civilians, his communications or contacts could enable copycats or other potential terrorists to engage in activity that would result in death or serious bodily injury to others. [#53-3 at 5]  Plaintiff has not plausibly shown that the imposition of these restrictions is not reasonably related to a legitimate penological interest.  Accordingly, Plaintiff has failed to plausibly allege a First Amendment violation of his right to free speech.  *Al-Owhali,* 687 F.3d at 1240.

## B.  Access to Courts

When construed liberally, Plaintiff's first claim also alleges that the SAMs violate his First Amendment right of access to the courts.  [#26 at 7]  Plaintiff alleges the SAMs violate his rights by prohibiting him from "communicating with any attorney of his personal preference" and requiring that his attorney requests be "pre-cleared" by the Federal Bureau of Investigation  [*Id.*]  He further claims that he requested permission to contact several attorneys since 2018 and received refusals without explanation or, sometimes, without any response at all.  [*Id.* at 7; #70 at 6, 25-27]

Defendants argue that this claim fails because Plaintiff has not sufficiently alleged that he suffered any actual injury from the alleged interference with his access to courts. [#53 at 12-13]  The  Court agrees.  Prison inmates have a constitutional right to meaningful access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996).  This right prohibits prison officials from "affirmatively hinder[ing] a prisoner's efforts to construct

a nonfrivolous appeal or claim." *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992).

Nonetheless, to state a right of access claim, "a prisoner must demonstrate actual injury

from interference with his access to the courts—that is, that the prisoner was frustrated

or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or

conditions of confinement."  *Gee*, 627 F.3d at 1191 (citing *Lewis*, 518 U.S. at 351-55).

"Conclusory allegations of injury in this respect will not suffice."  *Wardell v. Duncan*, 470

F.3d 954, 959 (10th Cir. 2006) (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir.

1999).

Plaintiff's allegations fail to satisfy the actual injury requirement.  Plaintiff claims

that he has requested to contact various attorneys to solicit legal assistance, but that his

SAMs make it impossible to get effective legal counsel, and most lawyers are "afraid" to

take SAMs cases.  [#26 at 7, 13, 15]  But Plaintiff fails to provide factual, non-conclusory

allegations of actual injury resulting from allegedly being deprived from accessing the

courts.  Plaintiff has no restrictions on his communications with federal courts, federal

judges, United States Attorney's Offices, various federal law enforcement entities, and

the Lawyers' Fund for Client Protection of the State of New York.  [#53-3 at 22]  Plaintiff

was also able to file the instant lawsuit in 2023 and has been able to participate in its

various stages thus far.  *See Sattar v. Gonzales*, No. 07-cv-02698-WDM-KLM, 2008 WL

5712727, at *9 (D. Colo. Nov. 3, 2008) ("Indeed, Plaintiff has filed the instant Complaint,

belying any claim that the SAMs have prevented him from pursuing a civil rights claim."),

*report and recommendation adopted as modified*, 2009 WL 606115 (D. Colo. Mar. 6,

2009).  Without more, the Court cannot find that Plaintiff was "frustrated or impeded in his

efforts to pursue a nonfrivolous legal claim concerning his conviction or conditions of

confinement." *Gee*, 627 F.3d at 1191 (citation omitted). The Court therefore finds that Plaintiff has not shown that the imposition of the SAMs caused any actual injury to his ability to pursue legal claims or deprived him of access to the courts.[6]  Accordingly, Plaintiff has failed to plausibly allege a First Amendment violation and the Court RECOMMENDS Claim One be DISMISSED.

### 2.  CLAIM TWO: Fifth Amendment Due Process Violation

Plaintiff's second claim alleges that Defendants arbitrarily imposed the SAMs on him "without any kind of due process . . . or any explanation whatsoever," and that the SAMs are an "exaggerated response" that serve no legitimate penological interest.  [#26 at 10]  Plaintiff further alleges that he should not be subject to SAMs restrictions because he has never been accused or convicted of any violent acts, was not under SAMs restrictions pre- or post-conviction (until six months into his 30-year sentence), and was never accused of violating BOP rules.  [*Id*. at 6]  Plaintiff alleges the "only justification" provided was that he was "corresponding with politicians about 'national security' subjects Defendants did not approve of."  [*Id*. at 10] Thus, Plaintiff asserts that his due process rights have been violated because of the arbitrary imposition of SAMs without any rational explanation or basis from Defendants.  [#26 at 6, 10]

---

[6] As a basis for his Sixth Amendment claim, Plaintiff spends much of his Complaint reciting a tale of the attorney he previously retained who "destroyed everything."  [#26 at 11-16]  Any claim against the former attorney does not appear to relate in any way to Plaintiff's "conviction or conditions of confinement."  *Gee*, 627 F.3d at 1191 (citation omitted).  Rather, it appears to be a potential civil theft claim.  And, in any event, Plaintiff does not sufficiently allege that he has been frustrated in pursuing any such claim, especially since Plaintiff has the ability to file court actions and communicate with the Lawyers' Fund for Client Protection of the State of New York.  [#53-3 at 22].

Defendants argue that Plaintiff has not plausibly alleged a deprivation of a protected liberty interest and, therefore, his due process claim must fail.  [#53 at 14-15] The Court agrees.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Id*. at 333 (quotation omitted).  Nonetheless, "due process is flexible and calls for such procedural protections as the particular situation demands."  *Id*.  at 334 (quotation omitted).  "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.'"  *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (quoting *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011)).

Prisoners retain "only a narrow range of protected liberty interests" under the Fifth Amendment.  *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (quotation omitted).  A protected liberty interest may arise when an inmate is subjected to conditions that impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Id*. at 1011 (quotation omitted).  The Tenth Circuit typically considers four non-dispositive factors in determining what qualifies as such a hardship, including whether: (1) the treatment relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of the treatment are extreme; (3) the treatment increases the duration of confinement; and (4) the length of the treatment is

indeterminate. *Id*. at 1012 (citing *Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007)).

Analyzing these four factors, the Court concludes that Plaintiff has not plausibly alleged a deprivation of a protected liberty interest.  To satisfy the first factor, there need only be a "reasonable relationship" between the treatment and the asserted penological interest. *Rezaq*, 677 F.3d at 1014.  Here, the SAMs imposed on Plaintiff were reasonably related to a penological interest.  Plaintiff has the knowledge and motivation to communicate plans for terroristic activities to outside contacts while incarcerated, which creates a substantial risk of injury or death to others, making these restrictions necessary. This factor thus weighs against finding a liberty interest.

As to the second factor, Plaintiff fails to assert that the SAMs imposed on him amount to extreme conditions.  The Tenth Circuit has held that the imposition of SAMs that limit the ability of ADX inmates to communicate both inside and outside the prison do not, by themselves, constitute extreme conditions.  *Gowadia v. Stearns*, 596 F. App'x 667, 673 (10th Cir. 2014).  And Plaintiff is allowed calls, mail access, and in-person visits with his attorney and his immediate family members, including his ex-wife.  [#53-3 at 8-16]  Without more specific facts concerning the conditions of Plaintiff's confinement, the Court cannot conclude the restrictions imposed on Plaintiff amount to "extreme conditions."  Thus, the Court finds that this factor weighs against finding a liberty interest.

Finally, with respect to the third and fourth factors, Plaintiff has not claimed that the SAMs imposed on him have increased the duration of his confinement.  [#26]  And the SAMs are in effect for one year, after which point, they are subject to further review and

direction.  [#53-3 at 33]  Thus, the Court concludes that the third and fourth factors weigh against finding a liberty interest.

Since Plaintiff has not shown that he was deprived of any liberty to which he was entitled, "no particular process was constitutionally due or required."  *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994); *see also Gowadia* 596 F. App'x 667, 673-74 (concluding that the imposition of SAMs does not deprive an inmate of a protected liberty interest); *Salim*, 2015 WL 13849468, at *10-12 (same).  Accordingly, the Court respectfully RECOMMENDS that Defendants' Motion be GRANTED as to Claim Two.

### 3.  CLAIM THREE: Sixth Amendment Right to Counsel

Next, Plaintiff claims Defendants violated his Sixth Amendment right to counsel. [#26 at 11-16]  Plaintiff alleges that he has requested to contact various attorneys, but that these requests are denied without explanation [*id*. at 7], and he "has made repeated efforts to obtain representation and effective advocacy," to no avail [*id*. at 11].  Plaintiff gives details about being taken advantage of by an attorney he retained, which caused him to become a "tax criminal."  [*Id*. at 11-14] According to Plaintiff, "SAMs make retaining effective advocacy impossible" because "most lawyers are afraid to take 'SAMs' cases." [*Id*. at 15]

Defendants argue that Plaintiff's allegations do not plausibly state a violation of his Sixth Amendment right to counsel.  [#53 at 16-18]  The Court agrees.  The Sixth Amendment provides that "[i]n all *criminal* prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. Const. amend VI (emphasis added).  Civil litigants, on the other hand, do not have a Sixth Amendment right to counsel.  *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006).

Here, Plaintiff relies upon the tale of the attorney he previously retained who "destroyed everything" as the basis for his Sixth Amendment claim. [#26 at 11-16] The thrust of this claim appears to be that Plaintiff is entitled to a return of the $100,000 he spent on that attorney. [*Id.*; *see also* #70 at 6] Plaintiff has not alleged that he is currently being criminally charged related to the stolen funds. Thus, Plaintiff's claim is civil in nature and he does not have a Sixth Amendment right to counsel for such a claim. Accordingly, the Court respectfully RECOMMENDS that Defendants' Motion be GRANTED as to Claim Three.

## IV.    CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** Defendants' Partial Motion for Summary Judgment [#54] and Defendants' Motion to Dismiss pursuant to Rule (12)(b)(6) [#53] be **GRANTED**.[7]

---

[7] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see, Morales-*

DATED:  February 5, 2025                    BY THE COURT:

                                            s/Scott T. Varholak
                                            Chief United States Magistrate Judge

---

*Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule
does not apply when the interests of justice require review).